JAMES YOUNG v. THE STATE.

No. 2919.   Decided October 26, 1904.

Murder—Fact Case—Circumstantial Evidence.

See evidence stated in opinion which is entirely circumstantial, and while it shows very damaging and legitimate inferences going to establish appellant's guilty participancy with another in the death of a child, yet it is not of that conclusive character which excludes every reasonable hypothesis than his guilt.

Appeal from the District Court of Lamar.    Tried below before Hon. Ben H. Denton.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life.

The opinion states the case.

*M. J. Hathaway* and *W. E. Calvin,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at confinement in the penitentiary for life.    The only question we deem necessary to consider is the sufficiency of the evidence.    The evidence in substance shows, that appellant, his wife and fourteen year old boy were living in Red River bottom, in Lamar County.    Cordie Ragsdale and her son, James, about 2½ years old, were living with them in the same house: all parties having been previously engaged in picking cotton.    A short while prior to the homicide, in which James Ragsdale lost his life by poisoning, appellant borrowed a wagon and carried his wife to her father's, Bob Marshall, two or three miles distant.    Deceased was taken sick with cramps and convulsions, and died in six or eight hours afterwards.    During his sickness appellant, Cordie Ragsdale (deceased's mother) and appellant's son were the sole inmates of the home.    When deceased became quite ill this fact was made known in the neighborhood, and various parties came and administered to deceased, those little acts of kindness incident to such occasions.    After his death, appellant went to the little village, two or three miles distant, and procured some clothes in which to bury deceased, and made an indefinite arrangement for a coffin, part of the cost of which was to be borne by the county.    He returned home, and the next morning, although earnestly urged, refused to go back to the village for the coffin, but took his gun and son, crossed over Red River into the Indian Territory, stating to the man carrying him across the river in the skiff, that he had to go to attend to a law-suit, and also stating, apparently in the same conversation, that it was imperative he should go to collect some money due him for picking cotton.    After stating that he had made arrangements for the coffin, among other

things he told said witness, that a man could have a good time with the mother of deceased, and that she (Cordie Ragsdale) had theretofore had trouble in getting a home on account of the child (deceased) ; that now she and the child too were better off. At the time he went after the burial clothes, a witness testified that he seemed to be worried. When he returned to the home the night of the death of the child, he feigned sleep and took no apparent interest, and seemed to feel no concern in the death of deceased. On the morning of his departure he had a hurried conversation with Cordie Ragsdale, in the house where deceased lay dead. The purport of this conversation no one knows so far as disclosed by this record. He then slipped a pair of pants over the pair he was wearing; secured his gun, and followed by his son, left, making the statement he would be back in an hour or so. He never returned until arrested, charged with this crime. A day or so after the death of the child, his mother being left the sole inmate of the house, she and her effects were taken to where defendant's wife was staying with her father. A short time thereafter, the officers being aroused by the suspicious character of the death of deceased, had the body exhumed, took the stomach out and placed it in a jar, which was subsequently turned over to a chemist, who ascertained the fact that it contained a large and deadly portion of strychnine. Search was also made in the trunk of Cordie Ragsdale, and a bottle containing strychnine was there found. On the trial of this case appellant filed application to have Cordie Ragsdale, who was charged with the same offense in the same indictment, tried first. The record shows this motion was granted. This is practically all the testimony in the case. While it shows very damaging and legitimate inferences going to establish the guilt of appellant or a guilty participancy with Cordie Ragsdale in the death of her child, yet it is not of that conclusive character required in cases depending on circumstantial evidence, which justifies this court in permitting the verdict to stand. It does not exclude every reasonable hypothesis than the guilt of defendant. It is true that he was at the house when the strychnine was given to the child—at least was living there; but we cannot say that he had guilty knowledge of the fact that it had been given, or a guilty acquiescence or consent in the giving of the same. Nor can we say that he knew anything about it, except a conclusive opinion indicating guilty agency with Cordie Ragsdale. Bare knowledge that appellant knew the crime had been committed or was to be committed, would not per se render him guilty of murder in the first degree, or of any offense whatever ; but there must be some guilty participancy, either as an accomplice, principal or accessory, as defined by the statutes of this State. We cannot say that the evidence is sufficiently coherent and conclusive to establish either. The judgment is accordingly reversed and the cause remanded.

*Reversed and remanded.*

Davidson, Presiding Judge, absent.